791 So.2d 491 (2001)
MAVERICK MEDIA GROUP, INC., Appellant,
v.
STATE of Florida DEPARTMENT OF TRANSPORTATION, Appellee.
No. 1D00-1195.
District Court of Appeal of Florida, First District.
June 26, 2001.
Rehearing Denied August 22, 2001.
Marsha G. Rydberg and Thomas H. Rydberg, Rydberg & Petitt, P. A., Tampa, for Appellant.
Pamela S. Leslie, General Counsel, Gregory G. Costas, Assistant General Counsel and Jodi B. Jennings, Assistant General Counsel, Florida Department of Transportation, Tallahassee, for Appellee.
POLSTON, J.
Appellee State of Florida Department of Transportation (DOT) denied appellant Maverick Media Group, Inc.'s sign permit application because the proposed sign was too close to an existing Texaco sign. Maverick petitioned for a formal administrative hearing pursuant to section 120.57(1), Florida Statutes, to challenge the denial of its sign permit application. DOT, in a final order, dismissed Maverick's petition and *492 denied its application for a state sign permit, ruling that Maverick does not have standing for a formal administrative hearing because it fails to meet the third-party standing requirements of Agrico Chemical Company v. Department of Environmental Regulation, 406 So.2d 478 (Fla. 2d DCA 1981). Because we hold that the third-party standing requirements of Agrico are not applicable, and Maverick has standing pursuant to sections 479.08 and 120.52(12)(a), Florida Statutes (1999), to challenge DOT's denial of Maverick's sign permit, we reverse.
Section 479.07(9)(a)2, Florida Statutes (1999), states generally that a permit shall not be granted for any sign unless the sign is located at least one thousand feet from any other permitted sign on the same side of the highway. There is no dispute that a Texaco sign, permitted by DOT, is located less than one thousand feet from Maverick's proposed sign location. Accordingly, DOT denied Maverick's sign permit application.
However, Maverick, in its Second Amended Petition for Formal Administrative Hearing, makes numerous allegations against the validity of the Texaco sign permit. Citing Lamar Advertising Company v. Department of Transportation, 490 So.2d 1315 (Fla. 1st DCA 1986), review denied, 501 So.2d 1281 (Fla.1986), Maverick alleges that it has standing to challenge DOT's denial of its permit because a permit issued for a sign not in compliance with Chapter 479, Florida Statutes, cannot form the basis for denial of an application for a valid permit.
DOT improperly characterizes Maverick's petition as a "third party challenge" to the Texaco sign, relying on Agrico to deny standing to Maverick. In Agrico, the issue was not whether Agrico, whose permit had been denied, had standing for a hearing. Rather, the issue was whether Agrico's business competitors had standing to file petitions objecting to the issuance of Agrico's permits. The agency affirmed the hearing officer's ruling to allow the competitors' participation as parties, but the court reversed, stating that "Agrico's business competitors were erroneously granted standing to interfere in DER's permitting procedure." Id.
Maverick is in the same posture as Agrico, not Agrico's business competitors, because Maverick is appealing the denial of its own permit. The business competitors of Agrico improperly intervened in Agrico's permitting process. The competitors' own permits were not at issue in the case.
The standing requirements under Agrico were for the third-party business competitors of Agrico, who needed to demonstrate a "substantial interest in the outcome of the proceeding" pursuant to section 120.52(10)(b), Florida Statutes (1977)(same as § 120.52(12)(b), Fla. Stat. (1999)[1]). See Agrico, 406 So.2d at 481-82 (there must be an injury in fact of a type or nature which the proceeding is designed to protect).
Although Maverick alleges the Agrico standing requirements, they are not required because Maverick is a specifically named person whose substantial interests *493 are being determined in the proceeding under section 120.52(12)(a), rather than section 120.52(12)(b). Section 479.08, Florida Statutes (1999), specifically provides such standing to Maverick, stating that "[a]ny person aggrieved by any action of the department in denying or revoking a permit under this chapter may, within 30 days after receipt of the notice, apply to the department for an administrative hearing pursuant to chapter 120."
DOT argues that Maverick is essentially bringing a private cause of action by attacking the validity of the Texaco sign, and therefore has no standing. Citing City of Sarasota v. Windom, 736 So.2d 741 (Fla. 2d DCA 1999), DOT states that "the most fundamental and fatal flaw in Maverick's position lies in the fact that it has no private cause of action to seek enforcement of the provisions of Chapter 479 against the holder of the Texaco sign permits." DOT's reliance on Windom is misplaced.
The court held in Windom that the plaintiffs lacked standing to challenge the city's placement of speed humps and tables on various city streets to reduce the volume and speed of traffic and to enhance pedestrian safety. The plaintiffs lived in different neighborhoods in the city and neither was required to travel on the affected streets. Id. The plaintiffs in Windom were not involved in any permitting process. The case is not applicable.
Maverick does not seek a private cause of action against the owner of the Texaco sign permit under Chapter 479 as asserted by DOT. Rather, Maverick seeks a statutorily provided remedy pursuant to sections 479.08 and 120.52(12)(a), Florida Statutes (1999).
Maverick has standing for a formal administrative hearing, as did Lamar Advertising Company in Lamar Advertising Co. v. Department of Transportation, 490 So.2d 1315 (Fla. 1st DCA 1986). Lamar Advertising applied for a sign permit with DOT for a location where a permitted sign already existed. The existing sign was permitted to National Advertising, who had leased the property. National Advertising's lease on the property terminated, which caused the permit to be in violation of section 479.13, Florida Statutes. Section 479.13, Florida Statutes, prohibited a permittee from maintaining a sign without written permission of the owner of the property on which the sign is located. Id. at 1317. A violation of section 479.13 would not result in an automatic termination of the permit, but a penalty could be imposed or a revocation proceeding initiated. Id. DOT denied Lamar Advertising's permit application because it viewed the National Advertising permit to have continued validity beyond the lease termination date. Id.
The court ruled against DOT, stating, "[o]nce a permit becomes invalid under Section 479.13, it no longer operates to encumber the land and cannot form the basis for denial of a valid permit." Id. at 1318 (emphasis added). The permit violated section 479.13 when the lease terminated, and was therefore invalid on that date. The court held that regardless of when DOT's permit cancellation proceedings were implemented or accomplished, the National Advertising permit ceased to exist as an impediment to Lamar Advertising's application on the date of invalidity. Id.
Lamar Advertising controls the outcome of this case. DOT argues in this case, just as it did in Lamar Advertising, that the permit for the Texaco sign cannot be considered invalid for purposes of Maverick's application, unless it is revoked through a separate proceeding with the owner of the Texaco sign permit as a party. Just as in Lamar Advertising, we hold that regardless of when DOT's permit *494 cancellation proceedings would be implemented or accomplished, the Texaco permit ceases to exist as an impediment to Maverick's application on the date of invalidity.
This interpretation of Lamar Advertising is consistent with Maverick's compelling reasoning that its proposed lawful permit should not be barred because of an existing illegal sign. A proper, lawful applicant should not be punished for the unlawfulness of another. How DOT regulates the offending illegal sign is not the concern of Maverick, but it should not bar Maverick's lawful application from going forward.
DOT ruled in its final order that even if Maverick's allegations are taken as true,[2] Maverick would not be able to obtain the relief it seeks. DOT, in its ruling, concluded that as a matter of law, (i) a permit containing false or misleading information is voidable and is not void ab initio, and (ii) a permit may not be revoked if the sign was erected in conformance with the law. We do not take issue with these statements of the law from cases of this Court by DOT, but we do not agree that it is apparent from the face of Maverick's Second Amended Petition that it will be barred from obtaining a permit.
Maverick does not only allege that there was false and misleading information in the Texaco sign permit application. Maverick also alleges that the Texaco sign is not on a site that may be permitted by the Department. Therefore, Maverick argues, the Texaco sign permit is void. See § 479.07(5)(a), Fla. Stat. (1999)("[i]f the permittee fails to erect a completed sign on the permitted site within 270 days after the date on which the permit was issued, the permit will be void"); § 479.07(6), Fla. Stat. (1999)("A permit is valid only for the location specified in the permit."). The application of these statutes would render the Texaco sign permit void, not merely voidable.
Maverick also alleges that the Texaco sign is illegal because it was not lawfully erected or maintained. See § 479.24(1), Fla. Stat. (1999)("A sign will lose its nonconforming status and become illegal at such time as it fails to be permitted or maintained in accordance with all applicable laws, rules, ordinances, or regulations other than the provision which makes it nonconforming."); § 479.01(14), Fla. Stat. (1999)(a "nonconforming sign" is a sign which was lawfully erected but does not comply with a law passed at a later date or a sign which was lawfully erected but which later fails to comply with a law due to changed conditions).
Maverick's conclusion that a permit may not be revoked if the sign was erected in conformance with the law is consistent with the classification of a "nonconforming sign." However, Maverick alleges that the Texaco sign is illegal, listing numerous reasons in its petition, rather than nonconforming. These allegations must be accepted as true.
There are numerous factual and legal issues regarding Maverick's petition to be decided, including whether the Texaco sign permit is nonconforming or illegal, and if illegal, at what point in time it became illegal. We do not reach any of these issues. See Sun States Utilities, Inc. v. Destin Water Users, Inc., 696 So.2d 944, 945 n. 1 (Fla. 1st DCA 1997)("Standing *495 should not be confused with the merits of a claim"; "[w]hen considering standing, the trial court must accept all the material allegations as true, and construe them in favor of the challenged party"). The merits of Maverick's claims must be first addressed through a formal administrative hearing, and then ruled on by DOT, prior to appellate review.
DOT has erred in ruling that Maverick lacked standing to challenge DOT's denial of its application for a sign permit. Although Maverick's claims may prove unsuccessful, it has standing to raise them in a formal administrative hearing. We do not address the merits of Maverick's claims that the Texaco sign permit is invalid because they have not yet been addressed by the parties in a formal administrative hearing.
REVERSED and REMANDED.
BARFIELD, C.J., concurs.
WOLF, J., dissents with opinion.
WOLF, J., dissenting
The general rule of law is that absent special injury a party does not have standing to enforce governmental regulations. See City of Sarasota v. Windom, 736 So.2d 741, 742-43 (Fla. 2nd DCA 1999) (holding that citizens had no private cause of action to challenge city's allegedly improper traffic control devices). A third party also does not generally have the right to compel the government to enforce regulations. See Centrust Sav. Bank v. City of Miami, 491 So.2d 576 (Fla. 3d DCA 1986) (holding that mandamus action could not be maintained by private citizen to require enforcement of building or zoning codes); RHS Corp. v. City of Boynton Beach, 736 So.2d 1211 (Fla. 4th DCA 1999) (holding that mandamus not available to compel city to inspect certain property and enforce land development regulations against a private property owner). In certain cases, however, the economic interests of a party have been determined to be sufficient to confer standing on that party to challenge the establishment of a new business during the initial permitting process for that business. See Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co., 522 U.S. 479, 118 S.Ct. 927, 140 L.Ed.2d 1 (1998); Skaggs-Albertson's v. ABC Liquors, Inc., 363 So.2d 1082 (Fla.1978).
The authority for a business enterprise to challenge the existing permit of a competitor during its own permitting process is much more sparse. The only real support for the proposition is Lamar Advertising Co. v. Dep't of Transp., 490 So.2d 1315 (Fla. 1st DCA 1986). For the reasons enumerated herein, I would limit the holding of that case to its specific facts.
Allowing a party to challenge the legality of an existing permit during an independent permit proceeding is significantly different than allowing a party to challenge the initial permit of an economic competitor. The instant case illustrates the reason for the difference. First, in order to avoid potentially inconsistent results between the permitting decision and a possible subsequent revocation decision, DOT would be forced to institute separate revocation proceedings during the pendency of the permitting proceedings and then attempt to consolidate the two actions.[3] Failure to do so might result in a permit being issued based on a finding regarding the illegality of an existing sign without any assurance that DOT would prevail in subsequent revocation proceedings concerning *496 the sign.[4] If DOT was unsuccessful in the subsequent revocation, two signs would then exist in close proximity to each other in direct contravention of the restrictions contained in section 479.07(9)(a)(2), Florida Statutes. Thus, DOT would be mandated to file revocation proceedings in contravention of those cases that hold mandamus will not lie in such situations. See, e.g., RHS Corp., 736 So.2d. at 1212.
The statutory language also does not require DOT to prove the legality of an existing permit. The statute prohibits location of the sign within "one thousand feet from any other permitted sign." § 479.07(9)(a)(2), Fla. Stat. The existence of another permitted sign within the 1000 foot radius is sufficient reason for denial under the statute. In the absence of a separate order revoking the existing sign's permit, I do not believe there is any support for the issuance of a permit to appellant.
This court's decision in Lamar Advertising can be distinguished from the instant case in one very important respect: the party seeking the sign permit in that case had a contractual relationship with the contract purchaser of the property where the competing sign was located which effectively terminated the competing sign's permit. Clearly a party with a legal interest in the underlying land or its designee can demonstrate a special injury entitling it to challenge the legality of a billboard permit on that property. In the instant case, the applicant sought to place a sign on a separate piece of property and demonstrated no interest in the underlying property where the existing sign was located. I would not further extend the holding in Lamar to abrogate existing law concerning the initiation of revocation proceedings.
NOTES
[1] Section 120.52(12), Florida Statutes (1999) states:

(12) "Party" means:
(a) Specifically named persons whose substantial interests are being determined in the proceeding.
(b) Any other person who, as a matter of constitutional right, provision of statute, or provision of agency regulation, is entitled to participate in whole or in part in the proceeding, or whose substantial interests will be affected by proposed agency action, and who makes an appearance as a party.
. . .
[2] Maverick's allegations must be accepted as true. See St. Francis Parkside Lodge of Tampa Bay v. Department of Health and Rehabilitative Services, 486 So.2d 32 (Fla. 1st DCA 1986)("[i]n considering the motions to dismiss the amended petitions, the Department must accept as true the factual allegations of the petitions"; reversing final order and holding that allegations in petitions were sufficient for standing).
[3] This could result in a procedural nightmare given different statutory time limitations, the addition of other parties, as well as different issues which might be involved in each proceeding.
[4] Different burdens of proof might be applicable in the separate proceedings. See Chancellor Media Whiteco Outdoor v. Dep't of Transp., 26 Fla. L. Weekly D627, D628 (Fla. 5th DCA Mar.2, 2001) (finding that standard of proof in billboard permit revocation proceeding is clear and convincing evidence). Estoppel might also apply in the revocation proceeding, but not in the independent permit action. See, e.g., Drury Displays, Inc. v. Brown, 306 Ill.App.3d 1160, 240 Ill.Dec. 173, 715 N.E.2d 1230, 1234-35 (1999).